**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYVLANIA**

| | |
|---|---|
| 3800 FRANKFORD AVE LLC, | : |
| | : |
| | : |
| | : |
| | : |
| Plaintiff, | : |
| | : NO. _____ |
| v. | : |
| | : |
| BOSTON HIKER L.L.C., | : |
| | : |
| Defendant. | : |
| | : |

## <u>COMPLAINT</u>

Plaintiff 3800 Frankford Ave LLC ("Plaintiff" or "Buyer"), by and through its undersigned

counsel, Klehr Harrison Harvey & Branzburg LLP, files this Complaint against Defendant Boston

Hiker L.L.C. ("Defendant" or "Seller"), and in support thereof avers the following:

### <u>Nature of the Action</u>

1.      This is an action for specific performance of a contract for the purchase and sale of

real estate.  Despite the parties' contract clearly and unambiguously requiring Seller to sell and

convey to Buyer 3800 Frankford Avenue, Philadelphia, PA (the "3800 Frankford") <u>and</u> 3780

Frankford Avenue, Philadelphia, PA (the "3780 Frankford"), in the lead up to closing Seller

claimed that the inclusion of 3780 Frankford Avenue was a "typographical error."  Based upon

this position, in a clear anticipatory breach of the subject contract, Seller has unambiguously stated

that it will not proceed to closing absent Buyer agreeing to omit 3780 Frankford from the

conveyance while still paying Seller the full contract price.  Accordingly, Buyer now comes before

the Court to compel specific performance of the Contract.

2.      Moreover, as Seller was and is aware, and as is clearly reflected in the contract, the subject transaction is the second half of a 1031 exchange.  As such, should Seller fail and refuse to voluntarily convey the subject properties, or should it not be compelled to do so prior to the deadline for completing the second part of the 1031 exchange, the lost tax benefit of the 1031 exchange will constitute consequential damages for which Seller will be liable to Buyer. Those damages are estimated to be several hundred thousand dollars.

## PARTIES, JURISDICTION AND VENUE

3.      Plaintiff 3800 Frankford Ave LLC (previously defined as Buyer) is a Pennsylvania limited liability company.  The sole member of Plaintiff is a trust.  The sole trustee of the member Trust is an adult individual and citizen of the State of New York. Thus, Plaintiff is a citizen of the State of New York.

4.      Defendant Boston Hiker LLC (previously defined as Seller) is a Pennsylvania limited liability company.  Upon information and belief, the sole member of Seller is Jennifer Hays, who upon information and belief, is a citizen of the Commonwealth of Pennsylvania.

5.      This Court has subject-matter jurisdiction over this action based upon the complete diversity of citizenship of the parties pursuant to 28 U.S.C. § 1332 because: (1) the parties are citizens of different states; and (2) the amount in controversy exceeds $75,000.00 as the purchase price under the Contract (as hereinafter defined) is $6 million and Buyer's consequential damages are well in excess of $75,000.00.

6.      This Court has personal jurisdiction over Defendant because it is a citizen of the Commonwealth of Pennsylvania and regularly does business in the Commonwealth.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district, and because the real property at issue is located in this judicial district.

**FACTUAL BACKGROUND**

8.      Since in or about 2024, Seller, with the assistance of a commercial real estate brokerage, has been marketing for sale an assemblage of three adjoining parcels of real property running between Frankford Avenue and Jasper Streets in Philadelphia, Pennsylvania, and commonly referred to as 3780-3800 Frankford Avenue or simply 3800 Frankford Avenue (the "Assemblage").

9.      In Seller's marketing materials that Buyer received, the Assemblage was visually depicted as follows:



A true and correct copy of the cover page to Seller's offering memorandum visually depicting the Assemblage is attached hereto as Exhibit A.

10.     Since in or about 2024, affiliates of Buyer have expressed interest in purchasing the Assemblage on multiple occasions.

11.     After several years of on and off discussions, Buyer and Seller entered into an Agreement of Sale dated May 7, 2026 (the "Contract") for the purchase and sale of the Assemblage.  A true and correct copy of the Contract is attached hereto as Exhibit B.

12.     In the very first numbered paragraph, the Contract clearly and unambiguously describes the properties that Seller agreed to sell and Buyer agreed to purchase in three separate ways – by reference to (a) the street addresses, (b) OPA Account Number, and (c) legal descriptions – as follows:

1. Sale of Property.  Sellers agree to sell, and Buyer agrees to purchase: (a) all of Seller's right, title and fee interest in and to that certain industrial building located at 3780-3800 Frankford Avenue, Philadelphia, Pennsylvania, and identified on the Tax Map of the City of Philadelphia as Parcels Nos. 88-4-2030-00, 88-5-9127-00 and 88-4-2030-02, together with all improvements, easements, licenses, rights-of-way, agreements, approvals, and other rights and appurtenances in and to the foregoing, as more particularly described on Exhibit "A" attached hereto and incorporated herein by reference (collectively, the "Real Property"); (b) and together with all personal property, rights and privileges, and other assets, tangible or intangible, of every kind, nature and description, wherever situated, comprising and/or used or useful in connection with the ownership, operation and maintenance of the Real Property (collectively, the "Personal Property"); (b) service contracts, and other contracts pursuant to which services or goods are provided to the Property, a full and certified schedule of which are attached hereto in the Schedule of Contracts attached hereto as Exhibit "B", (the "Service Contracts"); provided that Purchaser shall be obligated at Closing to assume only those Service Contracts that are not terminated prior to Closing pursuant to Section 8(p) (the Personal Property together with the Real Property and Service Contracts are hereinafter collectively called the "Property").  Buyer is not assuming any liabilities of Sellers with respect to the Property which arose or will arise prior to or during Seller's ownership of the Property.

Exhibit B at ¶ 1.

13.    Similarly, pursuant to paragraph 8(a) of the Contract, Seller represented, warranted and covenanted as follows:

> 8.    <u>Sellers' Representations and Warranties</u>.  Seller hereby represents and warranties to Buyer as follows, all of which representations and warranties are true and correct as of the date hereof and which shall be true and correct as of the Closing Date:
>
>     a.    Seller is the sole fee simple owner of the Property and shall deliver to Buyer (or its designee(s)) fee simple title by Bargain and Sale Deed and warranty bill of sale at the Closing, insurable by any reputable title insurance company licensed in Pennsylvania, at its regular rates, free and clear of any and all liens, mortgages, judgments, claims, and encumbrances.

<u>Exhibit B</u> at ¶ 8(a).

14.    The Contract provides that the purchase price for the Assemblage (defined in the Contract as the Property) is Six Million and 00/100 Dollars ($6,000,000.00).  <u>Exhibit B</u> at ¶2.

15.    Buyer and Seller are both sophisticated parties who were both represented by able counsel in connection with the drafting and negotiation of the Contract.  *See, e.g.,* <u>Exhibit B</u> at ¶ 21.

16.    From Buyer's issuance of a draft of the Contract on April 15, 2026 through the execution thereof on or about May 7, 2026, counsel for Seller and counsel for Buyer exchanged a series of marked-up drafts of the Contract, and also exchanged a series of written comments with respect to specific provisions of the Contract.

17.    Yet, throughout that process, the description of the property being conveyed (i.e. the Assemblage) was unchanged.

18.    Stated otherwise, at no point during the negotiation of the Contract did Seller object to, comment upon, redline, or otherwise indicate any disagreement with the inclusion of the full

Assemblage, including both 3780 Frankford Avenue and 3800 Frankford Avenue, as the parcels being conveyed.

19.    During the course of negotiation of the Contract, Buyer disclosed to Seller that it intended to acquire the Assemblage as the second half of a 1031 Exchange, and, as a result, the Contract contains a provision mandating that the parties cooperate with one another in order to effectuate the 1031 exchange. Exhibit B at ¶ 29.

20.    As such, the tax consequences of Buyer's inability to timely complete a 1031 Exchange are reasonably foreseeable consequential damages arising from Seller's breach of the Contract.

21.    The Contract is a fully integrated contract containing a clear and unambiguous integration clause. *See* Exhibit B at ¶ 22:

> 22.    Entire Agreement; Modification. This written agreement constitutes the entire and complete agreement between the parties hereto and supersedes any prior oral or written agreements. It is expressly agreed that there are no verbal understandings or agreements which in any way change the terms, covenants and conditions herein set forth, and that no modifications of this Agreement and no waiver of any of its terms and conditions shall be effective unless in writing and duly executed by the parties hereto.

22.    Paragraph 17 of the Contract provides that "[i]n the event of a default by Seller…Buyer may elect an action for specific performance." Exhibit B at ¶ 17.

23.    In addition, paragraph 8 contains a unilateral fee shifting clause in favor of Buyer if Seller commits an "intentional material breach…of any representation, warranty or obligation contained in [the Contract]." Exhibit B at ¶ 8.

24.    Buyer has posted all deposits required by the Contract, and has otherwise complied with its obligations under the Contract.

25.     On or about June 26, 2026, notwithstanding the facts that the Contract (a) clearly and unambiguously identifies the property to be sold as the full Assemblage, doing so in three different ways, and (b) contains an integration clause making clear that all prior negotiations were superseded, the Seller, via counsel, sent an email to Buyer claiming:

> As you're likely aware, there's a typographical error in the sales agreement regarding the address.  In the LOI, we agreed that the only property for sale was 3800 Frankford, however we noticed after the fact that the sales agreement actually listed 3780-3800 Frankford.  I assume this was a mutual mistake and not intentional, but if my assumption is incorrect, please let me know.  To be clear, however, as negotiated in the LOI, the only property my client is willing to convey is 3800 Frankford.

A true and correct copy of Buyer's and Seller's counsel's email correspondence is attached hereto as Exhibit C at p. 6.

26.     On June 29, 2026, Buyer, through undersigned counsel, responded to this contention, consistent with the foregoing, as follows:

> As you know, the parties executed a fully integrated contract which clearly and unambiguously identifies the parcels being sold to include both 3780 Frankford and 3800 Frankford both by reference to their street addresses and to their BRT numbers.  This identification of the properties being conveyed was and is consistent with the marketing materials issued by your client's broker, which also clearly and repeatedly identify both 3780 and 3800 as the properties being sold.  So, in short, the inclusion of both properties was not a mistake and not a typographical error, and is contractually binding.  That my client casually referenced only 3800 in the LOI—because it is the main parcel on which the building exists, is of no moment both because this was merely a casual reference, and because the LOI was superseded by the fully integrated contract which, again, is wholly consistent with how the assemblage was marketed to my client.  Thus, notwithstanding what your client may be "willing" to convey, he is contractually bound to convey both parcels, and my client is standing on rock solid ground to obtain an order specifically enforcing that obligation (together with contractually mandated attorneys' fees) if your client stands by its present willingness.

Exhibit C at p. 5.

27.     Thereafter, Seller, through counsel and its real estate broker, again stated that it would not comply with its contractual duties to convey the Assemblage, but instead, would only convey 3800 Frankford for the full $6 million purchase price.

28.     In order to advance the transaction towards closing, Buyer, through counsel, again wrote to Seller, through counsel, on July 2, 2026, stating:

> Our client intends to close pursuant to and in accordance with the contract. As you will recall, pursuant to our email exchange of June 17, 2026, the due diligence period was extended through June 29, 2026.  Thus, pursuant to paragraph 3 of the contract, closing is to occur "on or about thirty (30) days after the expiration of the Due Diligence Period" which would put Closing on or about July 29, 2026. We will be prepared to close by then.  In anticipation thereof, kindly provide me with drafts of all closing deliverables required to be executed and delivered by your client for our review and comments.

Exhibit C at p. 4.

29.     In response thereto, Seller's counsel again claimed the inclusion of all three parcels was in error, stating:

> Your email does not address the fact that Buyer is seeking to close under an agreement that, as Buyer now interprets it, would require Seller to convey property Seller **never** agreed to sell and, in fact, **cannot** convey. Seller does not agree that there is an enforceable agreement capable of closing as written, and will not schedule a closing or circulate closing deliverables under those circumstances.  Seller's position remains that the property description is clearly erroneous and undoubtedly inconsistent with the parties' actual transaction.

Exhibit C at p. 3.

30.     While Seller's position that it did not agree to convey the Assemblage was and is plainly without merit, upon further investigation, Buyer discovered that the Contract did contain a typographical error—but not the one claimed by Seller.  Specifically, the third parcel in the Assemblage, which was not identified by a street address, but merely its OPA Account Number, was incorrectly identified as 88-4-2030-02 rather than its correct OPA Account number 88-5-9915-60.  Buyer learned that in breach of Seller's representation and warranty that it was the owner of the full Assemblage, Seller did not own this third small lot.

31.     Buyer's inability to convey the third lot is a title defect. Thus, pursuant to paragraph 7(a)(i), Buyer agreed to waive this defect and proceed to closing.  Specifically, by further responsive email dated July 2, 2026, Buyer, through counsel, stated:

> If your client does not own a lot he contractually bound himself to sell, giving your client the benefit of every inference, that is a waivable title defect . My client's are prepared to waive that defect and proceed to closing.  As to the two other lots, your client did in fact, agree to sell them as is clear from a plain reading of the parties written contract.  Thus, your client is contractually bound to proceed to closing and convey the two lots he does own.

> To be clear, [is it] your position that your client will not be closing on the transaction contemplated by the fully executed written contract despite my client again making clear that it is ready, willing and able to perform in accordance with the terms of the contract?

Exhibit C at p. 2.

32.     Seller responded to this email by again claiming that the Contract's inclusion of both 3800 Frankford and 3780 Frankford and its description of these parcels in multiple manner was a "typographical error" and confirmed Seller's refusal to perform, and specifically directed Buyer to bring this action.  *See* Exhibit C at p. 2.

33.     In a final attempt to secure Seller's contractually mandated performance without judicial intervention, by email dated July 7, 2026, Buyer, through counsel, sent a final email to Seller noting the Contract's clear and consistent description of the parcels being conveyed to include both 3800 Frankford and 3780, and further reminding Seller of both the Contract's fee shifting clause as well as the potential for large consequential damages if the 1031 Exchange could not be timely consummated. *See* Exhibit C at p. 1.

34.     Seller ignored this email.

35.     Buyer is ready, willing and able to perform, all of its obligations under the Contract, including tendering the full purchase price in exchange for conveyance of 3780 Frankford and 3800 Frankford.

36. Seller has clearly and unambiguously stated that it will not perform its obligations under the Contract.

## COUNT ONE
### Breach of Contract/Specific Performance

37. Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

38. The Contract is a valid, binding, and enforceable agreement, supported by adequate consideration, and its terms are definite and unambiguous.

39. Buyer is ready, willing and able to proceed to closing under the Contract and to accept title to 3780 Frankford and 3800 Frankford in exchange for the tender of the purchase price.

40. Seller has unambiguously stated that it has no intention of performing its obligation to proceed to closing, contending that the description of the properties being conveyed to include both 3780 Frankford and 3800 Frankford in an attorney drafted and negotiated contract is a "typographical error."

41. Seller's unambiguous assertion that it will not perform is an express and/or anticipatory breach of the Contract.

42. An order directing Seller to perform its contractual obligations is the only adequate remedy because the subject real property is unique, such that compensatory damages alone would be inadequate to uphold the bargained-for purpose of the agreement.

43. For the reasons set forth above, Plaintiff is entitled to an order of specific performance directing Seller to proceed with the sale of the 3780 Frankford and 3800 Frankford pursuant to and in accordance with the Contract.

44. Moreover, paragraph 8 of the Contract provides that if Seller breaches the Contract, Buyer is entitled to recover all attorneys' fees and costs incurred in enforcing the Contract.

**WHEREFORE**, Plaintiff demands judgment in favor of Plaintiff and against Seller, and awarding Plaintiff:

a.      An order for specific performance, directing that Seller to convey clear, good and marketable title to 3780 Frankford and 3800 Frankford to Buyer in accordance with the Contract;

b.      An award of attorneys' fees and costs, as permitted by the Contract; and

c.      Such other and further relief as the Court may deem proper.

## COUNT TWO
### Breach of Contract

45.      Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

46.      The Contract is a valid, binding, and enforceable agreement, supported by adequate consideration, and its terms are definite and unambiguous.

47.      Buyer is ready, willing and able to proceed to closing under the Contract and to accept title to 3780 Frankford and 3800 Frankford in exchange for the tender of the purchase price.

48.      Seller has unambiguously stated that it has no intention of performing its obligation to proceed to closing, speciously contending that the description of the properties being conveyed to include both 3780 Frankford and 3800 Frankford is a "typographical error."

49.      Seller's unambiguous assertion that it will not perform is an express and/or anticipatory breach of the Contract.

50.      At the time the parties entered into the Contract, Buyer made Seller aware of its intention to purchase the Assemblage as the second half of an exchange under Section 1031 of the Internal Revenue Code (the "1031 Exchange").

51.     Should Seller continue to fail and refuse to perform or should an Order of specific performance not be entered within the time parameters necessary for the transaction to qualify as a 1031 Exchange, Buyer will lose the benefit of tax deferral and will immediately be obligated to pay taxes on its gain from the sale of the first part of the exchange.

52.     In such event, such tax obligation constitutes recoverable consequential damages as the tax obligation will have accrued as a result of Seller's breach, and the damages were and are reasonably foreseeable.

53.     Such damages are estimated to be many hundreds of thousands of dollars.

WHEREFORE, Buyer demands judgment in its favor and against Seller in an amount to be determined at trial, together with contractually mandated attorneys' fees and costs, and such other relief as this Honorable Court deems just and warranted.

Respectfully submitted,

Dated: July 15, 2026

By: ___/s/ William Katz_____
William C. Katz (PA ID No. 205086)
Christian Castile (PA ID No. 325857)
Klehr Harrison Harvey Branzburg LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
215-569-2700

*Attorneys for Plaintiff 3800 Frankford Ave LLC*

# Exhibit A

# 3780-3800 Frankford Avenue
## Philadelphia, PA

## *132,000 SF on 6.13 AC*



BINSWANGER
UNIQUELY SPECIALIZED SINCE 1931

# Exhibit B

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

## AGREEMENT OF SALE

THIS AGREEMENT is made and entered into as of the 7th day of May 2026 (the "Effective Date"), by and between **BOSTON HIKER LLC,** a Pennsylvania limited liability company, with an office at 3800 Frankford Avenue, Philadelphia, PA (the "Seller"), and **3800 Frankford Ave LLC**, a Pennsylvania limited liability company, with an address at 5 Balanchine Court, Airmont, NY or its successors, assigns or nominees (hereinafter referred to as "Buyer").

## WITNESSETH:

WHEREAS, in consideration of the mutual terms, covenants, conditions and agreements herein contained, and intending to be legally bound, it is hereby agreed by and between the parties as follows:

1. Sale of Property. Sellers agree to sell, and Buyer agrees to purchase: (a) all of Seller's right, title and fee interest in and to that certain industrial building located at 3780-3800 Frankford Avenue, Philadelphia, Pennsylvania, and identified on the Tax Map of the City of Philadelphia as Parcels Nos. 88-4-2030-00, 88-5-9127-00 and 88-4-2030-02, together with all improvements, easements, licenses, rights-of-way, agreements, approvals, and other rights and appurtenances in and to the foregoing, as more particularly described on Exhibit "A" attached hereto and incorporated herein by reference (collectively, the "Real Property"); (b) and together with all personal property, rights and privileges, and other assets, tangible or intangible, of every kind, nature and description, wherever situated, comprising and/or used or useful in connection with the ownership, operation and maintenance of the Real Property (collectively, the "Personal Property"); (b) service contracts, and other contracts pursuant to which services or goods are provided to the Property, a full and certified schedule of which are attached hereto in the Schedule of Contracts attached hereto as Exhibit "B", (the "Service Contracts"); provided that Purchaser shall be obligated at Closing to assume only those Service Contracts that are not terminated prior to Closing pursuant to Section 8(p) (the Personal Property together with the Real Property and Service Contracts are hereinafter collectively called the "Property"). Buyer is not assuming any liabilities of Sellers with respect to the Property which arose or will arise prior to or during Seller's ownership of the Property.

2. Payment for Property. The purchase price for the Property (the "Purchase Price") shall be the sum of Six Million Dollars and 00/100 ($6,000,000.00), subject to prorations and adjustments as set forth herein, payable as follows:

a.        Within three (3) business days of the Effective Date, Buyer shall make an earnest money initial deposit in the amount of One Hundred Thousand Dollars ($100,000.00) (the "Deposit") in partial payment for the purchase of the Property, which shall be deposited by Buyer in the trust account of Buyer's attorney (the "Escrow Agent"). It is agreed that the duties of the Escrow Agent are only as specifically provided herein and are purely ministerial in nature, such that the Escrow Agent shall incur no liability

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

except for willful misconduct or gross negligence, so long as the Escrow Agent acted in good faith. Buyer and Seller hereby specifically release the Escrow Agent from liability for any act done or omitted to be done by the Escrow agent in good faith in the performance of its duties hereunder. In the event that the parties disagree as to the disbursing of the deposit moneys, the Escrow Agent may deliver same to the specified authority set forth in this Agreement and notify the parties of such delivery, at which time the duties of the Escrow Agent shall be deemed fully fulfilled.

b.    Simultaneously with the Closing, the Purchase Price shall be paid to Seller.

3. Closing/Transfer of Title. Closing and transfer of title to the Property shall take place simultaneously on the date which is on or about thirty (30) days after the expiration of the Due Diligence Period (as defined hereafter) (such date as the "Closing Date"); provided that Buyer's closing conditions described under the terms of Paragraph 10 in this Agreement must be satisfied at or prior to the Closing Date. The Closing shall be held at the offices of Moishie M. Klein, Esq., located at 36 Airport Road, Suite 403 in Lakewood, NJ 08701 or at such other place as the parties may agree in writing. Seller's and Buyer's obligations to close hereunder are conditioned upon the truth as of the Closing Date, of each representation and warranty contained herein, the performance of each covenant to be performed by Buyer and Seller on or before the Closing Date, and upon the fulfillment, as of the Closing Date, by Seller and Buyer of all of their respective obligations hereunder. The parties shall make appropriate adjustments and prorations as of the Closing Date.

4.    Delivery of Possession. Seller shall deliver possession of the Property to Buyer on the Closing Date.

5.    Due Diligence/Examinations. Buyer shall have a period of thirty (30) calendar days (the "Due Diligence Period") after the date of execution and delivery of this Agreement and the Seller Due Diligence Materials (as hereinafter defined) by Seller to Buyer, to enter upon and examine the Property and the condition and operation thereof, including, but not limited to, engineering, marketing, legal, title, zoning and proposed occupancy, regulatory, fire safety, and environmental matters. Buyer, acting through its own personnel, its counsel, internal accountants, environmental consultants, and other representatives designated by it, shall have the full opportunity to examine the Property, Leases, contracts, licenses (if any), permits, agreements, records pertaining to the Property, and to otherwise perform such due diligence review as it deems necessary or proper (collectively, the "Examinations"). The Examinations by Buyer shall be at Buyer's own expense, and Seller shall cooperate fully in such investigation and will make its employees and representatives available to Buyer and its representatives without charge and will provide copies of documents to Buyer without charge. If Seller has not already done so, Seller will, within five (5) days from the date of the Effective Date, provide Buyer with copies of all plans (including architectural and design), specifications, contracts, service agreements, structural and engineering reports, title insurance policies, environmental reports and surveys in Sellers' possession or under its control, information

2

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

or materials in Sellers' possession or under its control and relating to the Property as may be requested by Buyer (collectively, the "Seller Due Diligence Materials"). Seller shall not have the right to comment on or participate in Buyer's determination of the scope of Examinations to be performed. If the results of the Examinations by Buyer with respect to all matters relating to the Property are not acceptable to Buyer, for any reason whatsoever in Buyer's sole and absolute discretion, Buyer shall have the right to terminate this Agreement at any time prior to the expiration of the Due Diligence Period by sending written notice of such termination to Seller prior to the expiration of the Due Diligence Period. Upon any such termination, the Deposit shall be returned to Buyer and neither party shall have any further obligations to the other party.

6.  No Mortgage Contingency. Buyer's obligation to close is not contingent upon Buyer obtaining financing. Buyer may obtain financing in connection with the transaction, and Seller shall reasonably cooperate with Buyer and its lender in connection therewith, including executing customary documents; provided, however, that such cooperation shall be at no cost or liability to Seller and shall not delay the Closing.

7.  Title Commitment. Promptly after the execution of this Agreement, Buyer shall obtain from a title company licensed to do business in Pennsylvania (the "Title Company"), at Buyer's cost, its commitment in its standard form (the "Title Commitment"), for title insurance, at ordinary rates, insuring the title of Buyer to the Property, free and clear of all liens, encumbrances, restrictions, charges, equities and claims.

a.  Upon receipt by Buyer of the Title Commitment, Buyer shall provide a copy to Seller. If the Title Commitment and/or a survey of the Property discloses conditions to which Buyer objects ("Defects"), Buyer shall notify Sellers of such Defects in writing within ten (10) days after receipt of same, and, Sellers shall have ten (10) days after receipt of Buyer's notice to notify Buyer whether Seller will cure such Defects. Any Defects which Seller agrees to cure shall, as a condition of the Closing, shall be cured and removed by Sellers from the Title Commitment and/or survey at or prior to the Closing Date (provided that Sellers cannot notify Buyer that it will not satisfy any of the matters described in the following sentence). In all events, Sellers shall be required to remove, at or before the Closing Date, all consensual liens or liens caused or permitted by Sellers, and all mortgages, judgments, monetary liens, and any other liens that may be removed by payment of money. If Sellers give Buyer such written notice, within ten (10) days after receipt of Buyer's notice, that it will not satisfy any Defect on or before the Closing Date, Buyer shall have the option either:

i.  To close the purchase of the Property on the terms and conditions of this Agreement by waiving such Defect; or

ii.  To terminate this Agreement by delivery of written notice of such election to Sellers, whereupon the entire Deposit shall immediately be reimbursed to Buyer, and neither party shall have any further liability to the other hereunder.

b.  Buyer's failure to notify Sellers of any objections to the title

3

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

documents within the period set forth in Paragraph (a) of this Article shall be considered to be Buyer's approval of such items.  Seller's failure to notify Buyer that it will cure any Defect within the ten (10) day period set forth in Paragraph (a) of this Article shall be considered to be Sellers' agreement to cure all Defects by the Closing Date.

c.      If the Title Commitment or survey, as of the Closing Date, discloses additional or new conditions which have arisen or been placed of record subsequent to Buyer's review of the title documents as provided for in Paragraph (a) above, and Buyer objects to any such Defects, or if such new information discloses the filing of any judgments or liens in connection with any outstanding monetary obligations of Sellers, then Sellers shall cure such Defects as a condition of Closing, or (other than with respect to monetary obligations) Buyer may terminate this Agreement, whereupon the entire Deposit, plus all diligence and approval costs incurred by Buyer, shall be reimbursed by Sellers to Buyer.

d.      Seller shall, within five (5) calendar days following the Effective Date, deliver to Buyer copies of any title policy, owner's policy, deed, survey, or other title documentation in Seller's possession relating to the Property.

8.      Sellers' Representations and Warranties.  Seller hereby represents and warranties to Buyer as follows, all of which representations and warranties are true and correct as of the date hereof and which shall be true and correct as of the Closing Date:

a.      Seller is the sole fee simple owner of the Property and shall deliver to Buyer (or its designee(s)) fee simple title by Bargain and Sale Deed and warranty bill of sale at the Closing, insurable by any reputable title insurance company licensed in Pennsylvania, at its regular rates, free and clear of any and all liens, mortgages, judgments, claims, and encumbrances.

b.      Seller is duly authorized and empowered to execute this Agreement and to perform and fulfill its respective obligations hereunder, and this Agreement constitutes the binding obligation of Seller enforceable in accordance with its terms.

c.      Seller hereby warrants and covenants to Buyer that there is no presence of any Hazardous Substances or Hazardous Materials (as defined in any local, state or federal law, statute, ordinance, regulation or decision or determination of any court or agency), including any asbestos, uncontrolled petroleum products, underground storage tanks, nor of any facility involved in the generation, transportation or disposal of Hazardous Substances or Hazardous Materials, at or on the Property to Seller's knowledge.

d.      No assessments for public improvements have been made against any of the Property or any portion thereof which remains unpaid, including, without limitation, improvements for the construction of sewer or water lines or mains, streets, sidewalks, curbs, and/or street lights.

4

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

e.      No condemnation or eminent domain proceedings are pending or, threatened against any of the Property or any portion thereof, and there is no change or, to Seller's knowledge, proposed change, in the route, grade, or width of, any street or road that is contiguous to the Property or any portion thereof.

f.      From the Effective Date until the Closing, Seller shall not transfer any interest in, or grant any easements or enter into, amend, modify, renew or grant any concessions with respect to, any lease or contractual agreement or understanding, written or oral, with respect to the Property or any portion thereof.

g.      Seller shall not enter into any new service contract affecting the Property or the maintenance, repair or operation thereof without the consent of Buyer unless (i) the contract is terminable as of Closing, or (ii) Buyer approves the contract, which approval is not to be unreasonably withheld, conditioned or delayed, and in which case any such new contract approved by Buyer shall be expressly assumed by Buyer at Closing.

h.      Seller is not a "foreign person" as that term is defined in §1445 of the Internal Revenue Code, and Seller shall execute an affidavit or affidavits to such effect in the form to be provided by Buyer.

i.      There is not now pending nor threatened any litigation, proceeding or investigation relating to the Property or Sellers' title thereto, or any condemnation or eminent domain proceedings pending or, threatened against the Property or any portion thereof, nor does Seller have reasonable grounds to know of any basis for such litigation, proceedings, or investigations.

j.      There exists no violation of any law, regulation, orders, or requirements issued by any governmental agency or authority, or action in any court on account thereof, against or affecting the Property. The Property and its current use(s) and operation pursuant to the current zoning is in compliance with applicable building codes, zoning, subdivision, and land-use laws, laws relating to parking and parking ratios, and any other local, state, or federal laws, regulations, codes, or ordinances. There exist no outstanding liens, fines, penalties, fees, assessments, or other deficiencies imposed by any federal, state, or local governmental agency with respect to the Property, nor has Seller received any written notice of any such pending or threatened imposition.

k.      The Property has direct access for pedestrian and vehicular traffic for ingress and egress from and to public roads. All water, storm, sewer, gas, electricity, telephone, sanitary sewer and other utilities adequately service the Property, enter the Property through lands as to which valid public or private easements exists that will inure to the benefit of Buyer, and the Property is furnished by facilities of public utilities and the cost thereof has been fully paid.  Seller has no knowledge and has received no notice that the utility services for the Property are incomplete or inadequate in their current condition.

5

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

l.      Seller has not made, and prior to Closing hereunder will not make, any commitments to any governmental authority or agency, utility company, school board, church or other religious body, or to any other organization, group, or individual, relating to the Property which would impose on Buyer the obligation to make any contributions of money, dedication of land, or grants or easements or rights-of-way, or to construct, install, or maintain any improvements, public or private, on or off the Property except as currently installed at the Property.

m.      All insurance policies held by Seller relating to or affecting the Property are in full force and effect, and will remain in force and effect until Closing. All requirements or recommendations by any insurer or by any board of fire underwriters or similar body have been fully complied with. There are no existing or pending claims against Seller with respect to the Property whether covered by insurance or otherwise.

n.      All documents and other information provided by Seller to Buyer pursuant to this Agreement shall be true and complete in all respects. No representation, warranty, or covenant by Seller in this Agreement contains or will contain any untrue statement of material fact, or omits or will omit to state a material fact necessary to make the statements therein not misleading.  Seller's representations and warranties shall survive the Closing and shall not merge into the Deed or the bill of sale or assignment of contracts.

p.      The Service Contracts disclosed to Buyer in the Schedule of Contracts attached hereto as Exhibit C, includes a true, correct and complete list of all service contracts relating to the Property in effect as of the Effective Date and will be in effect on the Closing Date. Other than the aforementioned service contracts, there are no agreements between Seller and any parties with respect to any maintenance or operations relating to the Property. During the Due Diligence Period, Buyer shall notify Seller, at its sole discretion, which, Service Contracts, if any, Buyer wishes to assume at Closing and which Service Contracts Buyer requests to be terminated at Closing. Seller shall be responsible to pay any early termination penalty or fees (if any) associated with the termination of any such Service Contract.

q.      All major mechanical systems, including the HVAC System, located at the Property and included in the sale are, and as of the Closing Date will be, in all material respects in good working order and condition, reasonable wear and tear excepted.

Sellers shall indemnify, defend and hold Buyer, its partners, shareholders, employees, representatives, agents, successors and assigns harmless from and against any and all claims, demands, causes of action, losses, damages and/or liabilities, costs and expenses (including reasonable attorney's fees), of any nature arising from or relating to: (i) any intentional material breach by Sellers of any representation, warranty or obligation contained in this Agreement, and (ii) any violation of environmental laws resulting from the actual release of Hazardous Substances at the Property caused by

6

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

Seller during Seller's period of ownership. This obligation shall survive Closing and shall not merge into the Deed.

9.    Closing Conditions.

Unless waived by Buyer in writing, Buyer's obligation to purchase the Property shall be contingent upon the fulfillment of the following conditions:

a.    Representations and Warranties; Performance.  All representations and warranties of Sellers hereunder being true and correct as of the date hereof and on the date of Closing, and Sellers having performed all obligations required to be performed by Seller under this Agreement.

b.    Delivery of Closing Documents.  Sellers shall have delivered all of the closing documents / deliverables as set forth in Paragraph 10 hereof.

c.    No Material Change.  No portion of the Property shall have been adversely affected or damaged as a result of fire, casualty, action by governmental authority, flood, riot, civil disturbance, terrorism, war or act of God.  Risk of loss shall remain on Seller through the time of Closing.  In the event that Buyer elects to close notwithstanding the occurrence of any of the above-described events, Seller shall assign to Buyer, at Closing, all insurance proceeds and/or condemnation proceeds to which Sellers may be entitled as a result of such event.

d.    Title Insurance.  Upon payment of the premium by Buyer, Buyer shall have received an ALTA owner's and lender's policy of title insurance from the Title Company insuring the state of title as required by the terms and provisions of this Agreement and in an amount not less than the Purchase Price and dated as of the time and date of Closing.

e.    Environmental.  Buyer shall, at its sole cost and expense, have obtained a Phase I Environmental Site Assessment from a qualified environmental consultant of Buyer's choosing. If the report identifies any recognized environmental conditions (RECs), recommends any further investigation (including a Phase II), or otherwise indicates the Property may be impacted by environmental contamination, Buyer shall have the right to terminate this Agreement by written notice to Seller within thirty (30) days after receipt of the report. In such event, the entire Deposit shall be promptly returned to Buyer, and neither party shall have any further obligation to the other under this Agreement.

g.    Assignment of the Contracts. Sellers shall have executed to Buyer an Assignment of the Contracts, in the form attached hereto as Exhibit "B-1".

h.    Pre-Closing Inspection. Buyer shall have the right to conduct a walkthrough inspection of the Property within three (3) business days prior to the Closing Date, at a mutually agreed-upon time, for the purpose of confirming that: (i) the physical

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

condition of the Property is substantially the same as of the Effective Date, reasonable wear and tear excepted, and that (ii) Seller has complied in all material respects with its obligations under this Agreement. The satisfactory completion of such walkthrough shall be a condition precedent to Buyer's obligation to close. If the walkthrough reveals any material adverse change in the condition of the Property or material breach of Seller's obligations, Buyer shall have the right to (a) delay the Closing and require Seller to cure such issues or (b) elect to proceed to Closing and receive a credit against the Purchase Price in an amount reasonably agreed upon by the parties to reflect the cost to cure.

i.      License Agreement. The Parties shall have entered into the License Agreement, attached hereto as Exhibit "C", pursuant to which the Seller shall have a right to continue its operations at the Property for a period of nine (9) months after the Closing Date (the "License Period"). During the License Period, Seller, as licensee, shall continue to be responsible for any and all costs associated with the Property, including real estate taxes, utility charges and insurance premiums.

10.    Seller's Closing Deliverables. At Closing, Seller shall deliver to Buyer:

a.      A Bargain and Sale Deed with Covenants against Grantors Acts, in recordable form acceptable to Buyer, conveying to Buyer good, marketable and indefeasible fee simple title to each of the Property in the state required by the terms and conditions of this Agreement.

b.      Seller's certification that the representations and warranties made by Seller in this Agreement remain true, correct and complete as of the Closing Date.

c.      Non-foreign person affidavits, setting forth Seller's taxpayer identification number.

d.      A Warranty Bill of Sale, in form and substance satisfactory to Buyer, selling and transferring the Personal Property to Buyer free and clear of all liens, claims, and encumbrances.

e.      The assignment of Service Contacts which Buyer has not requested be terminated by Seller at Closing and, if required by the terms of such agreement, a consent to such assignment (attached hereto as Exhibit C-1).

g.      A signed settlement statement with respect to the sale of the Property.

h.      All permits, licenses, certificates, keys, fobs, credentials, passwords, combinations and existing warranties relating to the Property.

i.      Such other documents as the Title Company insuring the Property or counsel for the Buyer and/or Buyer's lender, if any, may reasonably deem necessary in order to consummate the sale of the Property.

8

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

11.    Buyer's Closing Documents.  At each Closing, Buyer shall deliver to Seller:

a.    A signed settlement statements with respect to the purchase of the Property.

b.    Such other documents as the title company insuring the Property or counsel for the Seller may reasonably deem necessary in order to consummate the sale of the Property.

12.    Income and Expenses.

a.    Proration of Property Expenses.  The Parties agree that they will prorate water and sewage charges, municipal garbage and rubbish removal charges, utilities, and other expenses incurred from the operation of the Property, interest, and real estate taxes as of the final date of the License Period.  Seller shall use its best efforts to obtain readings of the water, electric, gas and other utilities to a date no sooner than five (5) days prior to such date.  Any special assessments made prior to such date shall be paid in full by Seller. Real estate taxes will be prorated for the calendar year of the Closing based upon real estate taxes levied or estimated to be levied in that year by each taxing body (without regard to the date of the levy or the fiscal year of the taxing body).

c.    The Closing costs where not specified in this Agreement shall be allocated between the parties as follows:

(i).    Seller shall pay: (A) the cost of Deed preparation and all title clearance matters, including but not limited to all costs associated with satisfying existing liens and encumbrances against the Property; (B) half of the real estate transfer tax; (C) all legal fees and expenses of Sellers' attorneys.

(ii).    Buyer shall pay: (A) the fee for recording the Deed; (B) the premiums for any owner's title insurance policy if purchased by Buyer herein; (C) half of the real estate transfer taxes; and (D) all legal fees and expenses of Buyer's attorneys.

13.    Broker.  Each of the parties represents to the other that they have not retained or used the services of a broker or agent in connection with this transaction other than Binswanger who shall be paid by Seller at Closing pursuant to a separate agreement. Each party agrees to indemnify and hold the other harmless from any claims of brokers or agents for fees or commissions arising out of this transaction attributable to a breach by such party of its representations under this Section 13.

14.    Operation of Property. From the Effective Date through Closing, Seller shall make all repairs and replacements which are required with respect to any portions of the Property in order to maintain the same in good working order and condition.  Seller shall not in any manner alter the condition of the Property prior to the Closing other than in furtherance of the development of the Property.   Seller shall perform all acts and make

9

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

all payments required under the terms of the Agreement, and shall be responsible for all real property taxes, insurance costs, and other carrying costs associated with the Property. Sellers shall not file any map or take any other action related to or affecting the zoning or use any of the Property without the prior written consent of Buyer, which may be withheld in Buyer's sole discretion. Seller shall not enter into any contract for or on behalf of or affecting the Property which cannot be terminated upon thirty (30) days or less prior notice and without charge or penalty, and Sellers shall not renew, or fail to give notice which, in the absence of such notice, will result in an automatic renewal of, modify, cancel, accept surrender of, terminate, accept any advance rental or payment, or accept any reduction in rent or other concessions under any agreements, or enter into any discussions, negotiations or agreements relating to any agreement, without the prior written consent of Buyer. Seller shall not enter into any lease granting rights to the any of the Property or portions thereof. Seller shall not consent to or allow any lien or encumbrance to be placed upon any portion of the Property, nor shall Seller file or allow the filing of any easement, covenant, servitude or any other restriction upon the Property, without the prior written consent of Buyer. Seller shall not execute any new service agreement, lease or other agreement for the any portion of any of the Property without the prior written consent of Buyer. Seller shall not, directly or indirectly, through any representative, agent or otherwise, solicit or entertain offers from, negotiate with or in any manner encourage, discuss, accept or consider any proposal of any other person or entity relating to the acquisition of the Property, in whole or in part, while this Agreement is in effect. Should Seller receive notice or other written form of correspondence from any party, Seller shall provide a copy of such notice to Buyer within five (5) days of its receipt thereof. Should Seller take any action which adversely affects any of the Property, Buyer may terminate this Agreement, whereupon the entire Deposit, plus all diligence and approval costs incurred by Buyer, shall be reimbursed by Seller to Buyer. From the Effective Date through the Closing, Buyer shall have the right exhibit any vacant portions/spaces of the Property to potential tenants.

15.    Eminent Domain. If, prior to the Closing Date, all or any portion of the Property is taken by, or made subject to, condemnation, eminent domain or other governmental acquisition proceedings, then Buyer, at its sole option, may elect to (i) terminate this Agreement by written notice to Sellers given at or prior to the Closing, whereupon the Escrow Agent shall immediately return all earnest monies paid by Buyer to Buyer and, upon receipt thereof, neither party hereto shall have any further rights against or obligations to the other under this Agreement, or (ii) proceed to Closing, and Seller shall assign to Buyer all condemnation proceeds and other sums payable with respect to such condemnation.

16.    Time Period. If any time for performance of an obligation under this Agreement expires on a Saturday, Sunday or a legal holiday, the time performance shall be extended to the next succeeding day which is not a Saturday, Sunday or a legal holiday.

17.    Non-Performance by Seller. In the event of a default by Seller, Buyer may, at Buyer's option, elect to waive any claim for loss of bargain, in which event Seller shall

10

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

refund to Buyer the entire Deposit paid by Buyer, and reimburse Buyer for all direct, out-of-pocket legal and professional fees, costs and expenses incurred by Buyer in this transaction including without limitation, any costs for title examination, survey, and Examinations.   In lieu thereof, however, Buyer may elect an action for specific performance.

18.     Non-performance by Buyer.  In the event of a default by Buyer, Sellers' sole remedy shall be to terminate this Agreement and retain the Deposit previously paid by Buyer.

19.     Documents Subsequent to Closing.  Seller and Buyer hereby agree to cooperate subsequent to the Closing herein in the preparation and delivery of any and all documents necessary to affect the terms, conditions and obligations of the parties hereto pursuant to this Agreement.

20.     Survival.  The representations and warranties of Seller contained in this Agreement shall survive the Closing for a period of twelve (12) months following the Closing Date. Any claim for breach of such representations and warranties must be made by Buyer in writing prior to the expiration of such twelve (12) month period, or shall thereafter be deemed waived. Notwithstanding the foregoing, (i) any covenants or obligations which by their terms are to be performed after Closing shall survive until fully performed, and (ii) the indemnification obligations expressly set forth herein shall survive in accordance with their terms.

21.     Notices.  Any notice or election required or permitted to be given or served by any party hereto upon any other shall be deemed given or served if personally delivered to either party to be notified or mailed by a national overnight delivery service or by U.S. registered or certified mail, postage prepaid, return receipt requested, or by confirmed facsimile or properly addressed as follows:

**If to Buyer:**

> 3800 Frankford Ave LLC
> c/o Michael Matlin
> mmmatlin@gmail.com

with copy to:

> Moishie M. Klein, Esq.
> 36 Avenue of the States, Suite 403
> Lakewood, New Jersey 08701
> T. 732-942-9999
> F. 732-942-9998
> E. mklein@kleinlawnj.com
> yherz@kleinlawnj.com

11

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

**If to Seller**:

Boston Hiker LLC
c/o Jennifer Wink Hays
finance@redlionfurniture.com

with copy to:

Jeffrey J. Ciarlanto, Esq.
225 Wilmington West Chester Pike
Suite 200
Chadds Ford, PA 19317
Tel. 215-967-0307
jeff@ciarlantolaw.com

22.    Entire Agreement; Modification.  This written agreement constitutes the entire and complete agreement between the parties hereto and supersedes any prior oral or written agreements.  It is expressly agreed that there are no verbal understandings or agreements which in any way change the terms, covenants and conditions herein set forth, and that no modifications of this Agreement and no waiver of any of its terms and conditions shall be effective unless in writing and duly executed by the parties hereto.

23.    Recording.  Seller acknowledges that Buyer may promptly record and from time to time re-record a short form memorandum of this Agreement.

24.    Binding Effect.  All covenants, agreements, warranties and provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.  When used herein, the singular shall include the plural, the plural shall include the singular, and the use of one gender shall include all other genders, as and when the context so requires.

25.    Severability.  If any provisions in this Agreement, or any application thereof, shall be invalid or unenforceable, the remainder of this Agreement and any other application of such provision shall not be affected thereby and shall not be rendered invalid or unenforceable.

26.    Governing Law.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Pennsylvania without regard to conflicts of law principles.

27.    Counterparts.  This Agreement may be signed in one or more counterparts, all of which taken together shall be deemed to be one original.

28.    Assignment. Buyer shall have the right, without the consent of Seller but upon prior written notice to Seller, to assign its rights under this Agreement to any

12

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

affiliated; provided, however, that Buyer shall remain liable for all obligations under this Agreement notwithstanding any such assignment.

29.    Section 1031 Exchange. Buyer and Seller acknowledge that the other party may affect a like-kind exchange under Section 1031 of the Internal Revenue Code of 1986, as amended (the "Code"). Accordingly, Buyer and Seller agree that they will cooperate with the other party to affect a tax-free exchange in accordance with the provisions of Section 1031 of the Code and the regulations promulgated with respect thereto. The requesting party shall be solely responsible for any additional fees, costs or expenses incurred in connection with the like-kind exchange contemplated by this paragraph, and the other party shall not be required to incur any debt, obligation or expense in accommodating the non-requesting party hereunder. In no event shall the requesting party's ability or inability to effect a like-kind exchange, as contemplated hereby, in any way delay the Closing or relieve the requesting party from its obligations and liabilities under this Agreement. The requesting party hereby agrees to indemnify and hold harmless the non-requesting party from any liability, losses or damages incurred by the non-requesting party in connection with or arising out of the Section 1031 like-kind exchange, including but not limited to any tax liability.

[Remainder of This Page Left Blank Intentionally]

13

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

**IN WITNESS WHEREOF** the parties hereto have caused this Agreement to be executed as of the day and year first above written.

**SELLER**:

**BOSTON HIKER LLC**

By: _____

Name: _____ Jennifer Winik Hays

Title: _____ Owner

**BUYER**:

**3800 Frankford Ave LLC**

By: _michael matlin_____

Name: _michael matlin_____

Title: _Managing Director_____

14

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

**EXHIBIT A**
**(Attach Description of Real Property)**

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

**EXHIBIT B**
**SCHEDULE OF SERVICE CONTRACTS**

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

**EXHIBIT B-1**

ASSIGNMENT AND ASSUMPTION OF SERVICE CONTRACTS

For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, BOSTON HIKER LLC (collectively, the "Assignor"), hereby assigns, transfers and delegates to 3800 Frankford Ave LLC, (the "Assignee"), and Assignee hereby agrees to assume and accept the assignment and delegation of all of Assignor's right, title and interest those certain service contracts described on the attached Exhibit "A" (the "Service Contracts"), with respect to the property located at 3780-3800 Frankford Avenue, Philadelphia, Pennsylvania (the "Property").

By accepting this Assignment and by its execution hereof, Assignee assumes the payment and performance of, and agrees to pay, perform and discharge, all the debts, duties and obligations to be paid, performed or discharged from and after the date hereof under the terms, covenants and conditions of the Service Contracts, including, without limitation, brokerage commissions and compliance with the terms of the Leases relating to tenant improvements and security deposits.

Assignor shall indemnify and hold Assignee harmless from and against any claim, demand, liability, cost or expense asserted against Assignor (including, without limitation, and by way of example only, reasonable attorney's fees, disbursements and amounts paid in settlement of claims) arising out of the failure of Assignor to perform its obligations under the Service Contracts during the period prior to the Effective Date of this Assignment.

The Assignee hereby assumes and covenants to perform all of the obligations of the Assignor under the Service Contracts. Assignee hereby agrees to indemnify and hold Assignor harmless from and against any claim, demand, liability, cost or expense asserted against Assignor (including, without limitation, and by way of example only, reasonable attorney's fees, disbursements and amounts paid in settlement of claims) arising out of the failure of Assignee to perform its obligations under the Service Contracts during the period on or after the Effective Date of this Assignment.

This Assignment shall insure to the benefit of and shall be binding upon, the respective successors and assigns of Assignor and Assignee. The terms and condition of this Assignment shall survive for a period of one (1) year from the Effective Date.

If any litigation between Assignor and Assignee arises out of the obligations of the parties under this Assignment or concerning the meaning or interpretation of any provision contained herein, the losing party shall pay the prevailing party's costs and expenses of such litigation including, without limitation, reasonable attorneys' fees.

This Agreement may be executed in any number of counterparts, each of which will be considered to be an original, but all of which when taken together shall constitute one and the same instrument.

17

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

**IN WITNESS WHEREOF**, Assignor has caused this instrument to be executed on its behalf on this _____ day of _____, 2026.

<u>**ASSIGNOR:**</u>

**Boston Hiker LLC**

By: _____
Name:_____
Title: _____

<u>**ASSIGNEE:**</u>

**3800 Frankford Ave LLC**

By: _____
Name:_____
Title: _____

18

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

Exhibit C
License Agreement

## POST-CLOSING OPERATIONAL LICENSE AGREEMENT

This Post-Closing Operational License Agreement (this "Agreement") is made as of _____, 2026 (the "Effective Date"), by and between 3800 Frankford Ave LLC ("Licensor"), and BOSTON HIKER LLC ("Licensee").

WHEREAS, Licensee, as Seller, and Licensor, as Buyer, entered into that certain Agreement of Sale, dated April 2026 (the "Agreement") for the property located at 3780-3800 Frankford Avenue, Philadelphia, Pennsylvania (the "Property"); and

WHEREAS, pursuant to the Agreement, the Parties have agreed Buyer, as Licensor, will grant to Seller, as Licensee, a license to continue its operations at the Property for the term and on the conditions described herein.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements hereinafter set forth, and for other good and valuable consideration the receipt and legal sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

### 1. Grant of License; No Possession.

Licensor hereby grants to Licensee a personal, revocable license to access the Property solely for the limited purpose of continuing Licensee's existing business operations conducted at the Property as of the Effective Date. Licensee shall have no right of exclusive possession of the Property or any portion thereof. Licensor expressly reserves full dominion and control over the Property and the right to access, use, and permit others to access and use the Property at all times.

### 2. No Lease; No Tenancy.

This Agreement is intended to create a license only and not a lease. Licensee acknowledges and agrees that this Agreement does not create a tenancy or leasehold estate and does not grant Licensee any right of exclusive possession of the Property. The rights granted to Licensee hereunder are non-exclusive and subject at all times to Licensor's rights as set forth herein. Nothing contained herein shall be deemed or construed to create a landlord-tenant relationship between the parties.

### 3. Term.

The term of this Agreement (the "Term") shall commence on the Closing Date (as defined in the Agreement) and shall expire nine (9) months thereafter, unless earlier terminated as provided herein. The Term shall automatically expire without notice, and Licensee shall have no right to extend or renew.

19

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

4. Limited Use.

Licensee shall use the Property solely for the continuation of its existing operations and for no other purpose. Licensee shall not: expand or intensify its operations, change the nature of its business, or use the Property for any new purpose without Licensor's prior written consent, which may be granted or withheld in Licensor's sole discretion.

5. Costs; Triple Net Obligations.

(a) Base Fee: Licensee shall have no obligation to pay base rent.

(b) Triple Net Obligations: Notwithstanding the foregoing, Licensee shall be solely responsible for all costs and expenses of the Property, including, without limitation: (i) all real estate taxes and assessments; (ii) all insurance premiums (including property and liability insurance required hereunder); (iii) all utilities; (iv) all maintenance and repair costs (structural and non-structural); (v) all operating expenses of any kind any and all other costs associated with the ownership, operation, and maintenance of the Property (collectively, the "Operating Costs"). Licensee shall timely pay all Operating Costs directly or reimburse Licensor within five (5) days of written demand.

6. Maintenance and Condition.

Licensee accepts the Property AS IS, WHERE IS. Licensee shall: (i) maintain the Property in good condition and repair; (ii) perform all repairs (structural and non-structural) (iii) prevent waste or damage. Licensor shall have no obligation to repair or maintain the Property.

7. Alterations.

Licensee shall not make any alterations, improvements, or modifications to the Property without Licensor's prior written consent, which may be granted or withheld in Licensor's sole discretion.

8. Insurance.

Licensee shall maintain throughout the Term: (i) Commercial General Liability Insurance with limits of not less than $1,000,000 per occurrence; (ii) Property insurance covering Licensee's personal property. Licensor shall be named as an additional insured. Certificates of insurance shall be delivered prior to occupancy and upon renewal.

9. Indemnification.

Licensee shall indemnify, defend and hold harmless Licensor and its affiliates from and against any and all claims, liabilities, damages, losses, and expenses (including

20

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

attorneys' fees) arising out of or relating to: (i) Licensee's use or operation at the Property; (ii) any act or omission of Licensee any breach of this Agreement. This provision shall survive termination.

10. Compliance with Laws.

Licensee shall comply with all applicable laws and shall not permit any hazardous materials to be used, stored, or disposed of on the Property in violation of applicable law.

11. Licensor Control and Access.

Licensor shall retain full control over the Property and may: (i) enter the Property at any time; (ii) perform work; (iii) show the Property; (iv) grant rights to third parties. Licensee shall not interfere with Licensor's rights and shall not restrict access to any portion of the Property. Licensee shall not change locks or security systems without Licensor's consent.

During the final four (4) months of the Term, Licensor and its agents shall have the right, upon reasonable prior notice, to enter the Property to exhibit the same to prospective purchasers, tenants, or lenders, and to post customary signage in connection therewith. Licensee shall reasonably cooperate with such efforts and shall not unreasonably interfere with or delay Licensor's marketing of the Property.

12. Termination.

Licensor may terminate this Agreement upon written notice to Licensee in the event of a default by Licensee; provided, however:

(a) with respect to any monetary default, Licensee shall have five (5) days after written notice to cure such default; and

(b) with respect to any non-monetary default, Licensee shall have ten (10) days after written notice to cure such default, or if such default is not reasonably capable of being cured within such ten (10) day period, Licensee shall have such additional time as is reasonably necessary to effect such cure, provided that Licensee commences such cure within such ten (10) day period and diligently pursues the same to completion.

(c) Notwithstanding anything to the contrary contained herein, Licensee shall have the right to terminate this Agreement at any time upon not less than thirty (30) days' prior written notice to Licensor. In the event of such termination, Licensee shall vacate and surrender the Property in accordance with the terms of this Agreement on or before the expiration of such thirty (30) day period, and shall remain responsible for all obligations under this Agreement through the effective date of such termination.

13. Holdover; Trespass.

21

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

If Licensee fails to vacate the Property upon expiration or earlier termination: (i) Licensee shall pay Licensor a holdover fee of $1,500 per day, and such occupancy shall constitute a trespass and not a tenancy. Licensor shall have the right to pursue immediate removal and all available remedies.

14. Assignment.

Licensee shall not assign this Agreement or permit any third party to use the Property without Licensor's prior written consent.

15. Surrender / Escrow.

Upon expiration or termination, Licensee shall: (i) immediately vacate the Property; (ii) remove all personal property and surrender the Property in broom-clean condition and the exterior shall be fully cleared. Licensee shall deposit with Licensor, upon execution of this License Agreement, the sum of One Hundred Thousand Dollars ($100,000) (the "Escrow") as security for Licensee's obligations hereunder, including, without limitation, the timely vacating of the Property, removal of all personal property, and surrender of the Property in the condition required herein. Licensor may apply all or any portion of the Security Deposit to cure any default by Licensee or to cover the cost of removing Licensee's property or restoring the Property, without prejudice to any other remedies. Any unused portion shall be returned to Licensee within thirty (30) days after surrender of the Property, less any amounts applied as permitted herein.

16. Operational Non-Interference

Notwithstanding anything to the contrary contained herein, Licensor agrees that, so long as Licensee is not in default under this Agreement, Licensee shall be entitled to use the Property for its permitted operations without material interference by Licensor. Licensor shall not unreasonably interfere with or disrupt Licensee's ongoing business operations.

17. Roof Maintenance and Liability.

Notwithstanding anything to the contrary contained herein, during the Term, Licensee shall, at its sole cost and expense, assume full responsibility for the maintenance and repair of the roof, consistent with its obligations to maintain the Property in good order and condition. Licensee shall maintain insurance for the roof and name Lessor as additional insured on the same. Licensee hereby assume full responsibility for any damage to (including a collapse of) the roof and shall, at its sole cost and expense repair and restore the same. Licensee shall indemnify, defend and hold harmless Licensor and its affiliates from and against any and all claims, liabilities, damages, losses and expenses (including reasonable attorneys' fees) arising out of or relating to Licensee's maintenance, use, or operation of the Property, including, without limitation, any damage to or failure of the roof whether or not resulting from the acts or omissions of Licensee or its agents, employees, or contractors.

22

Docusign Envelope ID: 834ABF40-4259-8837-83C1-76CC3F34FF24

18. Miscellaneous.

This Agreement constitutes the entire agreement between the parties. This Agreement may only be modified in writing signed by both parties. This Agreement shall be governed by the laws of the State of Pennsylvania.

LICENSOR:
3800 Frankford Ave LLC

By: _____

LICENSEE:
BOSTON HIKER LLC

By: _____

23

# Exhibit C

**From:** William C Katz
**To:** Jeffrey Ciarlanto; Yosef Herz
**Cc:** Mordechai Cohen; katelyn@bddw.com; Moishe Klein; cpennington@binswanger.com; Christian W. Castile; Clark, Lisa
**Subject:** RE: 3800 Frankford Avenue
**Date:** Tuesday, July 7, 2026 11:00:45 AM
**Attachments:** image001.png
image002.png

Jeff:

The contract clearly and unambiguously identifies the lots being conveyed.  Its on page 1, paragraph 1.  These multiple lots were included in the very first draft circulated, and remained unchanged throughout the rounds of mark-ups.  Thus, your client clearly agreed to sell multiple lots.

Despite these facts, you have now unambiguously asserted on more than one occasion that your client does not intend to honor its clear contractual obligations based upon the claim that the plain language of the contract negotiated between sophisticated parties and their counsel is somehow a "mistake".  This position is not tenable.

I will remind you for that the parties contract has a fee shifting clause.  I will also remind you that you client was and remains on notice that this transaction is the second half of a 1031 exchange, and thus in addition to being compelled to specifically perform and to pay the buyer's fees, if the deal does not close in a timely manner to constitute a valid 1031 exchange, your client's are also likely going to be held liable for these tax consequences as additional consequential monetary damages, which, given the dollars at issue, will be significant.

You and your client should guide yourselves accordingly.
Best,



**WILLIAM KATZ | PARTNER**
**KLEHR HARRISON HARVEY BRANZBURG LLP**
t 215.569.4284
wkatz@klehr.com  |  www.klehr.com

This message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please immediately contact the sender by reply email and destroy all copies of the original message and any attachments.

**From:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>
**Sent:** Thursday, July 2, 2026 3:37 PM
**To:** William C Katz <wkatz@klehr.com>; Yosef Herz <yherz@kleinlawnj.com>
**Cc:** Mordechai Cohen <mordyco@gmail.com>; katelyn@bddw.com; Moishe Klein <mklein@kleinlawnj.com>; cpennington@binswanger.com

**Subject:** Re: 3800 Frankford Avenue


Bill -

Your email continues to assume the very point in dispute — that Seller agreed to sell multiple lots in the first place.

Seller's position is not that Buyer has identified a waivable title defect. Seller's position is that the agreement contains an erroneous property description that does not reflect the parties' actual transaction, and Buyer cannot cure that problem by electing, after the fact, which mistakenly included parcels it now wishes to pursue.

Seller's position remains unchanged. The agreement does not reflect the parties' actual transaction, Seller did not agree to sell the additional lots, and Seller will not proceed to closing based on Buyer's effort to exploit that typographical error now. If Buyer believes otherwise, it can seek whatever relief it thinks is available, and Seller will absolutely respond accordingly.

---

**From:** William C Katz <wkatz@klehr.com>
**Sent:** Thursday, July 2, 2026 3:21 PM
**To:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>; Yosef Herz <yherz@kleinlawnj.com>
**Cc:** Mordechai Cohen <mordyco@gmail.com>; katelyn@bddw.com <katelyn@bddw.com>; Moishe Klein <mklein@kleinlawnj.com>; cpennington@binswanger.com <cpennington@binswanger.com>
**Subject:** RE: 3800 Frankford Avenue


Jeff:

If your client does not own a lot he contractually bound himself to sell, giving your client the benefit of every inference, that is a waivable title defect . My client's are prepared to waive that defect and proceed to closing.  As to the two other lots, your client did in fact, agree to sell them as is clear from a plain reading of the parties written contract.  Thus, your client is contractually bound to proceed to closing and convey the two lots he does own.


To be clear, its your position that your client will not be closing on the transaction contemplated by the fully executed written contract despite my client again making clear that it is ready, willing and able to perform in accordance with the terms of the contract?

2

Thanks,



**WILLIAM KATZ | PARTNER**

**KLEHR HARRISON HARVEY BRANZBURG LLP**

t 215.569.4284

wkatz@klehr.com   |   www.klehr.com

This message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please immediately contact the sender by reply email and destroy all copies of the original message and any attachments.

**From:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>
**Sent:** Thursday, July 2, 2026 3:07 PM
**To:** Yosef Herz <yherz@kleinlawnj.com>
**Cc:** Mordechai Cohen <mordyco@gmail.com>; katelyn@bddw.com; Moishe Klein <mklein@kleinlawnj.com>; cpennington@binswanger.com; William C Katz <wkatz@klehr.com>
**Subject:** Re: 3800 Frankford Avenue

Yosef -

Your email does not address the fact that Buyer is seeking to close under an agreement that, as Buyer now interprets it, would require Seller to convey property Seller **never** agreed to sell and, in fact, **cannot** convey. Seller does not agree that there is an enforceable agreement capable of closing as written, and will not schedule a closing or circulate closing deliverables under those circumstances. Seller's position remains that the property description is clearly erroneous and undoubtedly inconsistent with the parties' actual transaction.

**From:** Yosef Herz <yherz@kleinlawnj.com>
**Sent:** Thursday, July 2, 2026 1:59 PM
**To:** jeff@ciarlantolaw.com <jeff@ciarlantolaw.com>
**Cc:** Mordechai Cohen <mordyco@gmail.com>; katelyn@bddw.com <katelyn@bddw.com>; Moishe Klein <mklein@kleinlawnj.com>; cpennington@binswanger.com <cpennington@binswanger.com>; William C Katz <wkatz@klehr.com>
**Subject:** RE: 3800 Frankford Avenue

3

Jeff –

Our client intends to close pursuant to and in accordance with the contract. As you will recall, pursuant to our email exchange of June 17, 2026, the due diligence period was extended through June 29, 2026.  Thus, pursuant to paragraph 3 of the contract, closing is to occur "on or about thirty (30) days after the expiration of the Due Diligence Period"  which would put Closing on or about July 29, 2026. We will be prepared to close by then.  In anticipation thereof, kindly provide me with drafts of all closing deliverables required to be executed and delivered by your client for our review and comments.

Thank you,

Yosef Herz

**Law Office of**

**Moishie M. Klein, ESQ**

36 Airport Road, Suite 403

Lakewood, NJ 08701

p: 732-942-9999

f: 732-942-9998

e: yherz@kleinlawnj.com

**From:** William C Katz <wkatz@klehr.com>
**Sent:** Monday, June 29, 2026 1:34 PM

4

**To:** jeff@ciarlantolaw.com
**Cc:** Mordechai Cohen <mordyco@gmail.com>; Yosef Herz <yherz@kleinlawnj.com>; katelyn@bddw.com; Moishe Klein <mklein@kleinlawnj.com>; cpennington@binswanger.com
**Subject:** RE: 3800 Frankford Avenue

Jeff:

In addition to Yosef and Moishe, I am also counsel to the Buyer, and have been asked to respond to your below email.  While we certainly appreciate your client's offer to extend the due diligence period, we are not in agreement with your contentions in point 1.

As you know, the parties executed a fully integrated contract which clearly and unambiguously identifies the parcels being sold to include both 3780 Frankford and 3800 Frankford both by reference to their street addresses and to their BRT numbers.  This identification of the properties being conveyed was and is consistent with the marketing materials issued by your client's broker, which also clearly and repeatedly identify both 3780 and 3800 as the properties being sold.  So, in short, the inclusion of both properties was not a mistake and not a typographical error, and is contractually binding.  That my client casually referenced only 3800 in the LOI—because it is the main parcel on which the building exists, is of no moment both because this was merely a casual reference, and because the LOI was superseded by the fully integrated contract which, again, is wholly consistent with how the assemblage was marketed to my client.  Thus, notwithstanding what your client may be "willing" to convey, he is contractually bound to convey both parcels, and my client is standing on rock solid ground to obtain an order specifically enforcing that obligation (together with contractually mandated attorneys' fees) if your client stands by its present willingness.

That said, my clients are reasonable business people.  If your client has some legitimate need to retain 3780, my client's are certainly willing to consider any proposal your client may wish to make with respect to a fair and reasonable resolution of this issue.

Given the pending due diligence deadline, I would suggest that we schedule an all hands on deck call to discuss this issue.  Are you are and your client free at 3 PM this afternoon?  If not, we would ask that your client at least extend the due diligence period for an additional 24 hours to afford the parties an opportunity to speak and attempt to reach an accord, rather than unnecessarily turn what has been a cordial transaction into an adversarial one.

Otherwise, my client is prepared to both honor and enforce the contract aw written.

Hope to speak soon.

Best,

**WILLIAM KATZ | PARTNER**

5



**KLEHR HARRISON HARVEY BRANZBURG LLP**

t 215.569.4284

wkatz@klehr.com | www.klehr.com

This message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and/or privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please immediately contact the sender by reply email and destroy all copies of the original message and any attachments.

---------- Forwarded message ---------
From: **Jeffrey Ciarlanto** <jeff@ciarlantolaw.com>
Date: Fri, Jun 26, 2026, 4:59 PM
Subject: Re: 3800 Frankford Avenue
To: Yosef Herz <yherz@kleinlawnj.com>, Katelyn Feldstein <katelyn@bddw.com>,
Mordechai Cohen <mordyco@gmail.com>
Cc: Moishe Klein < >, Pennington, Chris <cpennington@binswanger.com>

Yosef -

I conferred with my client and a couple points:

1. As you're likely aware, there's a typographical error in the sales agreement regarding the address. In the LOI, we agreed that the only property for sale was 3800 Frankford, however we noticed after the fact that the sales agreement actually listed 3780-3800 Frankford. I assume this was a mutual mistake and not intentional, but if my assumption is incorrect, please let me know. To be clear, however, as negotiated in the LOI, the only property my client is willing to convey is 3800 Frankford.

2. Assuming my assumption is correct, then yes, my client can agree to your request for an extension of the due diligence period. My client does not, however, want to extend the original closing date. That said, my client is functionally fine with your due diligence period going right up until closing, which I have as occurring on or about July 17, which should be enough time for your results.

**From:** Yosef Herz <yherz@kleinlawnj.com>
**Sent:** Friday, June 26, 2026 11:04 AM
**To:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>; Katelyn Feldstein <katelyn@bddw.com>;
Mordechai Cohen <mordyco@gmail.com>
**Cc:** Moishe Klein <mklein@kleinlawnj.com>; Pennington, Chris
<cpennington@binswanger.com>
**Subject:** RE: 3800 Frankford Avenue

Hi Jeff,

Our clients have conducted testing at the Property and are awaiting lab results, which will be available in two weeks. We therefore request that diligence is extended until then to assess the results. Please confirm via email that diligence is extended until then.

Thank you,

Yosef Herz

**Law Office of**

**Moishie M. Klein, ESQ**

36 Airport Road, Suite 403

Lakewood, NJ 08701

p: 732-942-9999

f: 732-942-9998

e: yherz@kleinlawnj.com

---

**From:** Yosef Herz
**Sent:** Wednesday, June 17, 2026 3:31 PM
**To:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>; Katelyn Feldstein <katelyn@bddw.com>;
Mordechai Cohen <mordyco@gmail.com>
**Cc:** Moishe Klein <mklein@kleinlawnj.com>; Pennington, Chris
<cpennington@binswanger.com>
**Subject:** RE: 3800 Frankford Avenue

Confirmed.


Thank you Jeff.

___

**From:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>
**Sent:** Wednesday, June 17, 2026 3:06 PM
**To:** Yosef Herz <yherz@kleinlawnj.com>; Katelyn Feldstein <katelyn@bddw.com>;
Mordechai Cohen <mordyco@gmail.com>
**Cc:** Moishe Klein <mklein@kleinlawnj.com>; Pennington, Chris
<cpennington@binswanger.com>
**Subject:** Re: 3800 Frankford Avenue


Hi Yosef -


I understand that the parties spoke further and that the environmental consultant will be coming on Monday June 22nd with the due diligence period extended until June 29th.  If that is your understanding as well, please confirm. That is fine with me/my client.

___

**From:** Yosef Herz <yherz@kleinlawnj.com>
**Sent:** Wednesday, June 17, 2026 12:37 PM
**To:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>; Katelyn Feldstein <katelyn@bddw.com>;
Mordechai Cohen <mordyco@gmail.com>
**Cc:** Moishe Klein <mklein@kleinlawnj.com>; Pennington, Chris
<cpennington@binswanger.com>
**Subject:** RE: 3800 Frankford Avenue


Thank you Jeff.


I believe the parties have communicated and Buyer's environmental consultant will be re-visiting the Property tomorrow to assess the situation and advise on how we should proceed. So that he has sufficient time to conduct the necessary testing and issue his report, we please confirm via email that the diligence period is extended through next week Wednesday, June

8

24.


Thank you,

Yosef Herz

**Law Office of**

**Moishie M. Klein, ESQ**

36 Airport Road, Suite 403

Lakewood, NJ 08701

p: 732-942-9999

f: 732-942-9998

e: yherz@kleinlawnj.com


---

**From:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>
**Sent:** Tuesday, June 16, 2026 10:08 AM
**To:** Yosef Herz <yherz@kleinlawnj.com>; Katelyn Feldstein <katelyn@bddw.com>; Mordechai Cohen <mordyco@gmail.com>
**Cc:** Moishe Klein <mklein@kleinlawnj.com>; Pennington, Chris <cpennington@binswanger.com>
**Subject:** Re: 3800 Frankford Avenue


Hi Yosef -


Thanks for sending.  Let me review with my client and we'll get back to you ASAP.

---

**From:** Yosef Herz <yherz@kleinlawnj.com>
**Sent:** Monday, June 15, 2026 6:31 PM
**To:** Katelyn Feldstein <katelyn@bddw.com>; Mordechai Cohen <mordyco@gmail.com>
**Cc:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>; Moishe Klein <mklein@kleinlawnj.com>; Pennington, Chris <cpennington@binswanger.com>
**Subject:** RE: 3800 Frankford Avenue


Jeff / Katelyn,

9

Please see the Phase I which was conducted at the Property. (3800 Frankford Ave. ESA.pdf).

Buyer needs all materials related to the DEP case for ground water contamination in order to avoid having to test further. In regards to the same, Buyer will also need any information on wells that were drilled to test.

Furthermore, as per the recommendation here, "the storage practices for the of the various drums and containers at the Property represent a potential release to the soil and / or groundwater in the event of a spill or leak and need to be removed". Once the removal process is completed, we will need to revisit to see if further testing is necessary.

Please send over all materials regarding the DEP case and any wells ASAP so that we can review the pertinent information and avoid a full Phase II investigation and substantially extend the review process.

---

**From:** Yosef Herz
**Sent:** Tuesday, June 9, 2026 11:00 AM
**To:** Katelyn Feldstein <katelyn@bddw.com>; Mordechai Cohen <mordyco@gmail.com>
**Cc:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>; Moishe Klein <mklein@kleinlawnj.com>; Pennington, Chris <cpennington@binswanger.com>
**Subject:** RE: 3800 Frankford Avenue

Jeff / Katelyn, just wanted to touch base here.

Section 5 of the PSA states that "Buyer shall have a period of thirty days Due Diligence/Examinations. Buyer shall have a period of thirty (30) calendar days (the "Due Diligence Period") after the date of execution and delivery of this Agreement and the Seller Due Diligence Materials (as hereinafter defined) by Seller to Buyer, to enter upon and examine the Property and the condition and operation thereof, including, but not limited to, engineering, marketing, legal, title, zoning and proposed occupancy, regulatory, fire safety, and environmental matters."

10

We received the materials on May 18, 2026, putting the expiration for diligence on June 17, 2026.

Thank you,

Yosef Herz

**Sent:** Friday, May 29, 2026 1:04 PM
**To:** Mordechai Cohen <mordyco@gmail.com>
**Cc:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>; Yosef Herz <yherz@kleinlawnj.com>; Moishe Klein <mklein@kleinlawnj.com>; Pennington, Chris <cpennington@binswanger.com>
**Subject:** Re: 3800 Frankford Avenue

We will get a copy over to you, we are searching our records for it.

On Fri, May 29, 2026 at 10:28 AM Mordechai Cohen <mordyco@gmail.com> wrote:

Good morning,

Do you have a copy of your title report?

Mordy Cohen

848 299 2325

On Tue, May 19, 2026 at 9:51 AM Mordechai Cohen <mordyco@gmail.com> wrote:

Tyvm

Mordy Cohen

848 299 2325

11

On Tue, May 19, 2026, 9:50 AM Jeffrey Ciarlanto <jeff@ciarlantolaw.com> wrote:

Hi Mordy -

We are not aware of any dielectric tests or utility plans/maps.  Your roofer can definitely take a core sample though.

---

**From:** Mordechai Cohen <mordyco@gmail.com>
**Sent:** Tuesday, May 19, 2026 9:24 AM
**To:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>
**Cc:** Yosef Herz <yherz@kleinlawnj.com>; Moishe Klein <mklein@kleinlawnj.com>; Pennington, Chris <cpennington@binswanger.com>; Katelyn Feldstein <katelyn@bddw.com>
**Subject:** Re: 3800 Frankford Avenue

Are you aware of any dielectric tests preformed on the transformers?

Mordy Cohen

848 299 2325

On Tue, May 19, 2026, 9:20 AM Mordechai Cohen <mordyco@gmail.com> wrote:

Good morning,

Do you have a utility map/plan from the property?

Can my roofer take a core sample of the roof?

Mordy Cohen

848 299 2325

On Thu, May 14, 2026, 3:16 PM Jeffrey Ciarlanto <jeff@ciarlantolaw.com> wrote:

Hi Yosef -

12

I am cc'ing Katelyn Feldstein on this who is the seller's in-house counsel and will be helping gather the below.

---

**From:** Yosef Herz <yherz@kleinlawnj.com>
**Sent:** Thursday, May 14, 2026 11:44 AM
**To:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>; Moishe Klein <mklein@kleinlawnj.com>
**Cc:** Pennington, Chris <cpennington@binswanger.com>; Mordechai Cohen <mordyco@gmail.com>
**Subject:** RE: 3800 Frankford Avenue

Jeff, please send over all available DD materials and property-related documents in Seller's possession, including, without limitation, all operating expense records, maintenance and service reports, invoices, roof reports/warranties, sprinkler, HVAC and electrical transformer records, surveys, environmental reports (Phase I, Phase II, etc.), plans, permits, inspections, contracts, and any other materials relating to the property and its operation. If the material are available in a Dropbox / Google Drive, please share the same.

Thank you

---

**From:** Yosef Herz
**Sent:** Thursday, May 7, 2026 5:14 PM
**To:** 'Jeffrey Ciarlanto' <jeff@ciarlantolaw.com>; Moishe Klein <mklein@kleinlawnj.com>
**Cc:** Pennington, Chris <cpennington@binswanger.com>; Mordechai Cohen <mordyco@gmail.com>
**Subject:** RE: 3800 Frankford Avenue

Thank you, Jeff!

---

**From:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>
**Sent:** Thursday, May 7, 2026 5:08 PM
**To:** Yosef Herz <yherz@kleinlawnj.com>; Moishe Klein <mklein@kleinlawnj.com>

13

**Cc:** Pennington, Chris <cpennington@binswanger.com>; Mordechai Cohen <mordyco@gmail.com>
**Subject:** Re: 3800 Frankford Avenue

Thanks, please see the attached fully executed copy.

---

**From:** Yosef Herz <yherz@kleinlawnj.com>
**Sent:** Thursday, May 7, 2026 3:47 PM
**To:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>; Moishe Klein <mklein@kleinlawnj.com>
**Cc:** Pennington, Chris <cpennington@binswanger.com>; Mordechai Cohen <mordyco@gmail.com>
**Subject:** RE: 3800 Frankford Avenue

Jeff, see attached. Please return a countersigned when available.

Thank you,

Yosef Herz

**Law Office of**

**Moishie M. Klein, ESQ**

36 Airport Road, Suite 403

Lakewood, NJ 08701

p: 732-942-9999

f: 732-942-9998

e: yherz@kleinlawnj.com

14

**From:** Yosef Herz <yherz@kleinlawnj.com>
**Sent:** Thursday, May 7, 2026 3:22 PM
**To:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>; Moishe Klein <mklein@kleinlawnj.com>
**Cc:** Pennington, Chris <cpennington@binswanger.com>; Mordechai Cohen <mordyco@gmail.com>
**Subject:** Re: 3800 Frankford Avenue

Jeff, thanks for catching that. I revised accordingly and sent for signature.

*Yosef Herz*

**From:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>
**Sent:** Thursday, May 7, 2026 11:50:47 AM
**To:** Yosef Herz <yherz@kleinlawnj.com>; Moishe Klein <mklein@kleinlawnj.com>
**Cc:** Pennington, Chris <cpennington@binswanger.com>; Mordechai Cohen <mordyco@gmail.com>
**Subject:** Re: 3800 Frankford Avenue

I was just about to get this signed and noticed a typo.  In paragraph 8(q), it looks like you included my revised indemnity paragraph but never deleted the original one and now there are two competing paragraphs.  If you want to send me a Word version, I can make the edit and get it signed.  Otherwise, feel free to make the edit yourself and send me an updated PDF.  Either is fine with me.

**From:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>
**Sent:** Wednesday, May 6, 2026 11:41 AM
**To:** Yosef Herz <yherz@kleinlawnj.com>; Moishe Klein <mklein@kleinlawnj.com>
**Cc:** Pennington, Chris <cpennington@binswanger.com>; Mordechai Cohen <mordyco@gmail.com>
**Subject:** Re: 3800 Frankford Avenue

Thanks Yousef.  I'm not sure if you actually attached a redlined version (it looked like two clean versions on my phone), but it's fine, I can see the additions.  I will

15

likewise circulate to the seller for signature.

---

**From:** Yosef Herz <yherz@kleinlawnj.com>
**Sent:** Tuesday, May 5, 2026 11:53 AM
**To:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>; Moishe Klein <mklein@kleinlawnj.com>
**Cc:** Pennington, Chris <cpennington@binswanger.com>; Mordechai Cohen <mordyco@gmail.com>
**Subject:** RE: 3800 Frankford Avenue

Thanks Jeff.

Attached is an execution copy as well as a redline showing the date change from April to May and the sections below added in as discussed.

I will circulate to Buyer for signature shortly.

Thank you,

Yosef Herz

**Law Office of**

**Moishie M. Klein, ESQ**

36 Airport Road, Suite 403

Lakewood, NJ 08701

p: 732-942-9999

f: 732-942-9998

e: yherz@kleinlawnj.com

**From:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>
**Sent:** Monday, May 4, 2026 4:26 PM
**To:** Yosef Herz <yherz@kleinlawnj.com>; Moishe Klein <mklein@kleinlawnj.com>
**Cc:** Pennington, Chris <cpennington@binswanger.com>; Mordechai Cohen <mordyco@gmail.com>
**Subject:** Re: 3800 Frankford Avenue

Yosef -

We are good with your edits.  We had one final insertion.  There's a chance that my client will not need the property for the entire 9 months, so I drafted up a simple early termination paragraph below.  If you're ok with that, I'll work in the edited roof paragraph as well this one and circulate a final copy.

**Early Termination by Licensee.**
Notwithstanding anything to the contrary contained herein, Licensee shall have the right to terminate this Agreement at any time upon not less than thirty (30) days' prior written notice to Licensor. In the event of such termination, Licensee shall vacate and surrender the Property in accordance with the terms of this Agreement on or before the expiration of such thirty (30) day period, and shall remain responsible for all obligations under this Agreement through the effective date of such termination.

**From:** Yosef Herz <yherz@kleinlawnj.com>
**Sent:** Thursday, April 30, 2026 3:41 PM
**To:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>; Moishe Klein <mklein@kleinlawnj.com>
**Cc:** Pennington, Chris <cpennington@binswanger.com>; Mordechai Cohen <mordyco@gmail.com>
**Subject:** RE: 3800 Frankford Avenue

Jeff,

17

Please see below in red.


Thank you,


Yosef Herz

**Law Office of**

**Moishie M. Klein, ESQ**

36 Airport Road, Suite 403

Lakewood, NJ 08701

p: 732-942-9999

f: 732-942-9998

e: yherz@kleinlawnj.com

---

**From:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>
**Sent:** Thursday, April 30, 2026 11:50 AM
**To:** Yosef Herz <yherz@kleinlawnj.com>; Moishe Klein <mklein@kleinlawnj.com>
**Cc:** Pennington, Chris <cpennington@binswanger.com>; Mordechai Cohen <mordyco@gmail.com>
**Subject:** Re: 3800 Frankford Avenue


Yosef -


I just spoke with Chris and it sounds like this can be resolved with additional language in the license. I quickly drafted up the below. If you are good with that, feel free to insert into the license. Otherwise, let me know if you have any edits:


**Roof Maintenance and Liability.**
Notwithstanding anything to the contrary contained herein, during the Term,

18

Licensee shall, at its sole cost and expense, assume full (be) responsib(le)ity for the (routine) maintenance and repair of the roof, consistent with its obligations to maintain the Property in good order and condition. Licensee shall maintain insurance for the roof and name Lessor as additional insured on the same. Licensee hereby assume full responsibility for any damage to (including a collapse of) the roof  and shall, at its sole cost and expense repair and restore the same. Licensee shall indemnify, defend and hold harmless Licensor and its affiliates from and against any and all claims, liabilities, damages, losses and expenses (including reasonable attorneys' fees) arising out of or relating to Licensee's maintenance, use, or operation of the Property, including, without limitation, any damage to or failure of the roof whether or not (to the extent) resulting from the acts or omissions of Licensee or its agents, employees, or contractors.

---

**From:** Yosef Herz <yherz@kleinlawnj.com>
**Sent:** Thursday, April 30, 2026 10:31 AM
**To:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>; Moishe Klein <mklein@kleinlawnj.com>
**Cc:** Pennington, Chris <cpennington@binswanger.com>; Mordechai Cohen <mordyco@gmail.com>
**Subject:** RE: 3800 Frankford Avenue

Jeff, can 3:00 work for you?

---

**From:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>
**Sent:** Wednesday, April 29, 2026 9:29 AM
**To:** Yosef Herz <yherz@kleinlawnj.com>; Moishe Klein <mklein@kleinlawnj.com>
**Cc:** Pennington, Chris <cpennington@binswanger.com>
**Subject:** Re: 3800 Frankford Avenue

Hi Yosef -

Nice to meet you.  Yes, I can do a call tomorrow.  Does around 2pm work for you?

**From:** Yosef Herz <yherz@kleinlawnj.com>
**Sent:** Tuesday, April 28, 2026 6:07 PM
**To:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>; Moishe Klein <mklein@kleinlawnj.com>
**Cc:** Pennington, Chris <cpennington@binswanger.com>
**Subject:** Re: 3800 Frankford Avenue

Jeff, thanks for sending this.

The revisions are fine. The restriction on renovating the roof during the Seller's license period, however, isn't workable for the Buyer.

Are you available for a phone call so we can discuss option that work for both parties? Tomorrow is a bit tight for us, but Thursday, we should be free all day.

Please let us know.

Thank you,

Yosef Herz

---

**From:** Jeffrey Ciarlanto <jeff@ciarlantolaw.com>
**Sent:** Thursday, April 23, 2026 10:27:55 AM
**To:** Yosef Herz <yherz@kleinlawnj.com>; Moishe Klein <mklein@kleinlawnj.com>
**Cc:** Pennington, Chris <cpennington@binswanger.com>
**Subject:** 3800 Frankford Avenue

Counsel -

Very nice to meet you.  I represent the seller of 3800 Frankford Avenue.

20

Attached are a few redline edits to your drafts.  Let me know if these are agreeable to you or if there is anything you'd like to discuss.


Thanks,


Jeff


_____

Jeffrey J. Ciarlanto, Esq.


**The Ciarlanto Law Firm LLC**

225 Wilmington-West Chester Pike, Suite 200

Chadds Ford, PA 19317

Main: 215.543.7802

Direct: 215.967.0307

Email: jeff@ciarlantolaw.com

www.ciarlantolaw.com


_____

–

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are

21

hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

--

**Katelyn Feldstein**

**BDDW** | 3801 Jasper Street | Philadelphia, PA 19124

Tel: 215.825.5755

www.bddw.com